**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MARIA AVILA, individually, and on behalf of other members of the general public similarly situated and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**RUE21, INC., an unknown business entity, and DOES 1-100, inclusive,**<br><br>**Defendants.** | **1:19-cv-01040-LJO-SKO**<br><br>**CORRECTED[1] MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO REMAND UNDER 28 U.S.C. § 1447. (ECF NO. 4)** |

## I. INTRODUCTION

This is a wage and hour putative class action first initiated by Plaintiff Maria Avila ("Plaintiff") in the Tulare Superior Court. After Plaintiff filed the operative First Amended Complaint (the "FAC") for herself, as well as on behalf of other members of the general public similarly situated and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act ("PAGA"), Defendant Rue21, Inc. ("Defendant") removed the case to this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), on July 30, 2019. ECF No. 1. "A motion to remand is the proper procedure for challenging removal." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241,

---

[1] It has come to the Court's attention that the original order, ECF No. 10, contained a mathematical error. This order, which supersedes the original, corrects that error and makes additional changes to address the critical jurisdictional issues.

1244 (9th Cir. 2009). Seeking to challenge the removal, Plaintiff timely brought the instant Motion to Remand on August 29, 2019, as required by 28 U.S.C. § 1447(c). ECF No. 4. In particular, Plaintiff contends that the removal was untimely and that Defendant has failed to meet its burden of showing by a preponderance of the evidence that the amount in controversy exceeds $5 million as required by CAFA. *Id.* at i. Defendant filed an Opposition on September 16, and Plaintiff replied on September 23. ECF Nos. 5-6.

Pursuant to Local Rule 230(g), the Court finds this matter suitable for a decision on the papers. Having considered all of the arguments raised in the parties' submissions, relevant law, and record in this case, the Court GRANTS the Motion.

## II. <u>BACKGROUND</u>

Defendant allegedly employed Plaintiff as an hourly-paid, non-exempt employee from approximately October 2013 to November 2018. ECF No. 1, Exh. B ("FAC") ¶ 25. The FAC asserts eleven causes of action against Defendant. *Id.*, FAC at 1-2. The first nine causes of action are based on violations of various sections of the California Labor Code for unpaid overtime, meal and rest periods, minimum wage, and business expenses; for non-compliant with wage statements; and for failure to keep requisite payroll records and to timely pay wages during employment and final wages. *Id.* The tenth cause of action is for violation of the California Business & Professions Code §§ 17200, *et seq*., and the eleventh cause of action is for violation of PAGA. *Id.*

## III. <u>LEGAL STANDARD</u>

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Under CAFA, "a district court has original jurisdiction over a class action where: (1) there are one-hundred or more putative class members; (2) at least one class member is a citizen of a state different from the state of any defendant; and (3) the aggregated amount in controversy exceeds $5

million, exclusive of costs and interest.  Congress enacted CAFA to curb perceived abuses of the class action device which, in the view of CAFA's proponents, had often been used to litigate multi-state or even national class actions in state courts." *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1067 (9th Cir. 2019) (internal quotation marks and citations omitted.)  "[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

"[T]he plaintiff is 'master of her complaint' and can plead to avoid federal jurisdiction." *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007) (internal citation omitted). Nevertheless, "[t]he burden of establishing removal jurisdiction, even in CAFA cases, lies with the defendant seeking removal." *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011) (citation omitted).  "A defendant seeking removal must file in the district court a notice of removal 'containing a short and plain statement of the grounds for removal . . . .'" *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting 28 U.S.C. § 1446(a)).

## IV. <u>ANALYSIS</u>

Plaintiff challenges the instant removal on two grounds.  First, she contends that Defendant untimely removed this action after the 30-day time limitation set by 28 U.S.C. §§ 1446(b)(1), (b)(3). ECF No. 4 at 5.  Plaintiff also argues that Defendant has failed to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million as required by 28 U.S.C. § 1332(d)(2).  *Id.* at 9-10.

### A. <u>Timeliness of Removal</u>

"Section 1446(b)'s time limit is mandatory [such that] a timely objection to a late petition will defeat removal . . . ." *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1142 n.4 (9th Cir. 2013) (internal quotation marks and citations omitted).  Defendant had 30 days after receipt of the initial pleading, summon, "amended pleading, motion, order or other paper" to remove this action.  28 U.S.C. §§ 1446(b)(2)(B), (b)(3).  The Summons, Complaint, and FAC were served by substituted service and

by mail on Defendant on May 21, 2019. ECF No. 1, Exh. C ("Proof of Service"). Given that substituted service is considered complete on the 10th day after mailing under California Code of Civil Procedure § 415.20(a), Defendant had, according to Plaintiff, until July 2, 2019 to remove this action. ECF No. 4 at 5-6. Because Defendant did not remove this action until August 15, Plaintiff contends that the removal is untimely under Section 1446(b). *Id.* at 6. The Court is not persuaded.

Contrary to Plaintiff's misinterpretation and misapplication of Section 1446(b), the 30–day period for removal "starts to run from defendant's receipt of the initial pleading *only* when that pleading *affirmatively reveals* on its face the facts necessary for federal court jurisdiction." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 690-91 (9th Cir. 2005) (emphasis added) (internal quotation marks and citation omitted). Whether the removability of the FAC is affirmatively revealed on its face is limited to "the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." *Id.* at 694; *see also Kuxhausen*, 707 F.3d at 1141 ("Preferring a clear rule, and unwilling to embroil the courts in inquires 'into the subjective knowledge of [a] defendant,' [the Ninth Circuit has] declined to hold that materials outside the complaint start the thirty-day clock." (internal citation omitted)). "[E]ven if a defendant *could* have discovered grounds for removability through investigation, it does *not* lose the right to remove because it did not conduct such an investigation and then file a notice of removal within thirty days of receiving the indeterminate document." *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013) (emphasis added).

Here, the FAC does not specify the total amount in controversy for the proposed class; Plaintiff only pleads her damages as less than $75,000. ECF No. 1, FAC ¶ 2. Because the FAC does not affirmatively reveal that the aggregated amount in controversy, the 30–day period for removal was never triggered. *See, e.g.*, *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) ("[U]nder the controlling law at the time Michaels received the complaint, it did not 'affirmatively reveal[ ] on its face the facts necessary for federal court jurisdiction,' so the initial 30–day removal period was never triggered." (internal quotation marks and citation omitted)).

4

Alternatively, while "defendants need not make extrapolations or engage in guesswork; yet the statute 'requires a defendant to apply a reasonable amount of intelligence in ascertaining removability.' Multiplying figures clearly stated in a complaint is an aspect of that duty." *Kuxhausen*, 707 F.3d at 1140 (internal quotation marks and citation omitted). Plaintiff does not explain how multiplying the figures clearly stated in the FAC would affirmatively show that the amount in controversy exceeds $5 million, thereby triggering the 30-day period for removal. ECF No. 4 at 8-9. Nevertheless, the Court notes that Plaintiff alleges her damages are less than $75,000 and the proposed class is estimated to be greater than 50 individuals. ECF No. 1, FAC ¶¶ 1, 15. Multiplying $74,999 with 51 individuals equal to approximately $3.82 million damages. This shows that even if Defendant multiplied the stated figures in the FAC, it would not be affirmatively clear that the amount in controversy exceeds $5 million. Defendant has no obligation "to supply information which [Plaintiff] had omitted" from the FAC or consult "its business records to identify a representative valuation." *Kuxhausen*, 707 F.3d at 1141. The Court therefore finds that the FAC fails to affirmatively reveal enough information such that it was obvious, when a reasonable amount of intelligence is applied, for Defendant to ascertain the existence of removability. Accordingly, the 30-day period to remove this action under Section 1446(b) has not been triggered.

As the Ninth Circuit explained in *Roth*, "[i]f plaintiffs think that their action may be removable and think, further, that the defendant might delay filing a notice of removal until a strategically advantageous moment, they need only provide to the defendant a document from which removability may be ascertained. Such a document will trigger the thirty-day removal period, during which defendant must either file a notice of removal or lose the right to remove." *Roth*, 720 F.3d at 1126 (citation omitted). Plaintiff has failed to provide Defendant with any such document here beyond the FAC for Defendant ascertain the removability of this action. *See Levanoff v. SoCal Wings LLC*, 22015 WL 248338, at *1-2 (C.D. Cal. Jan. 16, 2015) (holding that the Statement of Damages providing that a total of $8.16 million in damages for the proposed class triggered the 30-day period). The Court,

therefore, cannot say Defendant has "ignored pleadings or other documents from which removability may be ascertained and [sought] removal only when it becomes strategically advantageous for it to do so." *Roth*, 720 F.3d at 1125. Defendant's removal of this action is, for the above reasons, timely.

**B.      Establishing that the Amount in Controversy Exceeds $5 Million**

Furthermore, Plaintiff argues that Defendant has failed to show by a preponderance of the evidence that the amount in controversy exceeds $5 million as required by Section 1332(d)(2). ECF No. 4 at 9-10. Section 1332(d)(6) specifies that "[i]n any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6). Plaintiff contends that "Defendant is required to produce 'summary-judgment-type evidence' of the amount in controversy if . . . it is indeterminate from the face of the complaint that the jurisdictional threshold is met." ECF No. 6 at 3; *see also* ECF No. 4 at 1. But Defendant disputes that this is the correct burden for a removing party and insists that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." ECF No. 5 (internal quotation marks omitted) (quoting *Dart Cherokee*, 135 S. Ct. at 554)).

"The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (internal quotation marks and citation omitted). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be *accepted* when *not contested* by the plaintiff or questioned by the court. [A] defendant's notice of removal need include *only* a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 924-25 (emphasis added). "Yet, when the defendant's assertion of the amount in controversy *is challenged* by plaintiffs in a motion to remand, the Supreme Court has said that *both sides* submit proof and the court then decides where the preponderance lies. Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable

assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198 (emphasis added).

Having reviewed the FAC and Notice of Removal, ECF No. 1, the Court finds that Defendant has provided plausible allegations showing that the amount in controversy exceeds the jurisdictional threshold. The Notice of Removal alleges that the average hourly and overtime rates of non-exempt employees in California similar to Plaintiff are $11.12 and $16.68, respectively. ECF No. 1 ("Notice of Removal") ¶ 29. Plaintiff proposes a class of all former and current hourly-paid or non-exempt employees of Defendant in California from February 6, 2015 to final judgment. *Id.*, FAC ¶ 13. Defendant claims that 2,660 of its employees in at least 28 stores in California fall within the proposed class. *Id.* ("Notice of Removal") ¶ 30. Based on these numbers, Defendant calculates Plaintiff's maximum potential liability as follows:

| Claims | Estimated Amounts in Controversy Beginning from February 6, 2015 to Final Judgment |
|---|---|
| Unpaid Overtime Claim (1st Claim) | 28 stores x $16.68 in overtime hourly rate x 2,118 unpaid overtime hours = $989,190.72 <br><br> *Id.* ¶ 29 |
| Unpaid Meal Period Claim (2nd Claim) | 28 stores x $11.12 in average hourly rate x 2,118 shifts where meal periods were not provided = $659,460.48 <br><br> *Id.* ¶ 33 |
| Unpaid Rest Period Claim (3rd Claim) | 28 stores x $11.12 in average hourly rate x 3,177 shifts where rest periods were not provided = $989,190.72 <br><br> *Id.* ¶ 35 |

7

| | |
|---|---|
| Unpaid Minimum Wage Claim (4th Claim) | 28 stores x $9 in minimum hourly wage x 2,118 hours where minimum wage was not paid = $533,736 *Id.* ¶ 37 |
| Statutory Penalty Claim for Failure to Pay Minimum Wage (4th Claim) | 2,660 employees x ($100 for the initial failure to timely pay minimum wage + $250 for a subsequent failure to pay each employee minimum wage)[2] = $931,000 *Id.* ¶ 38 |
| Statutory Penalty Claim for Failure to Pay Final Wages that Were Earned but Unpaid Within 72 Hours of Leaving Defendant's Employment (5th Claim) | 1,459 employees x $2,668.80 ($11.12 in average hourly rate x 8 hours/day x 30 days maximum) = $3,893,779.20 *Id.* ¶ 40 |
| **TOTAL** | $7,996,357.12 (exclusive of attorneys' fees) |

Accepting the allegations as true for purposes of removal, the Court is persuaded that Defendant has provided a "plausible assertion of the [required] amount in controversy in its notice of removal." *Ibarra*, 775 F.3d at 1197-98 (internal citation omitted). Defendant, therefore, is not required to produce proof to demonstrate by the preponderance of the evidence that greater than $5 million in damages is recoverable, unless Plaintiff asserts that the amount in controversy is $5 million or less. As far as the Court can discern, Plaintiff fails to clearly admit that the amount in controversy is $5 million or less in

---

[2] Plaintiff alleges that under the California Labor Code § 1197.1, Defendant is liable for a penalty of $100 for the initial failure to timely pay minimum wage, then $250 for each subsequent failure to pay each same employee minimum wage. ECF No. 1, FAC ¶ 87.

her Motion and Reply.[3]  ECF Nos. 4, 6.    Nevertheless, given the overall thrust of the Motion and Plaintiff's intent to challenge the Court's jurisdiction under CAFA, the Court construes Plaintiff's position as claiming that the amount in controversy is $5 million or less.  *See Arias*, 936 F.3d at 927 ("Where a removing defendant has shown potential recovery 'could exceed $5 million and the [p]laintiff has *neither* acknowledged nor sought to establish that the class recovery is potentially any less,' the defendant 'has borne its burden to show the amount in controversy exceeds $5 million.'" (emphasis added) (internal citation omitted)).

Turning to the legal burdens, "[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'  Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions."  *Ibarra*, 775 F.3d at 1197.  However, "evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations[,][t]hat kind of reasoning is *not* akin to conjecture, speculation, or star gazing."  *Id.* (emphasis added) (internal quotation marks and citation omitted) (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754, 771-72 (11th Cir. 2010)).  To be clear, "the amount in controversy

---

[3] In reply, Plaintiff asserts that she is "specifically challeng[ing] the *accuracy* of Defendant's calculations."  ECF No. 6 at 3 (emphasis added).  This phrasing does not make clear that Plaintiff is admitting that the amount in controversy is less than $5 million.  If Plaintiff, for instance, is disputing that the amount in controversy is $5.1 million instead of $7.99 million, that is not the kind of challenge that would trigger Defendant's burden to produce evidence.  Plaintiff must challenge the Court's jurisdiction under CAFA by admitting that the amount in controversy is $5 million or less.

Moreover, the other kinds of jurisdictional challenges raised by Plaintiff, such as timeliness of the removal and what burden Defendant must bear to succeed on removal, are not challenges to the amount in controversy and, therefore, do not trigger Defendant's burden to produce evidence.  *Ibarra*, 775 F.3d at 1195 (requiring the defendant to produce evidence to show that the amount in controversy exceeds $5 million because "plaintiffs sued in state court alleging that damages do not exceed $5 million").

reflects the *maximum* recovery the plaintiff *could* reasonably recover." *Arias*, 936 F.3d at 927 (emphasis added). In sum, Defendant is only required to show that it is more likely than not that Plaintiff's maximum recovery reasonably could be over $5 million. This burden is not daunting as "a removing defendant is not obligated to 'research, state, and prove the plaintiff's claims for damages.'" *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal citation omitted); *see also Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) (holding that a removing defendant is not obligated "to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation."). Removing "defendants cannot be expected to try the case themselves for purposes of establishing jurisdiction, and then admit to the opposing party and to the Court that a certain number of wage and hour violations did indeed occur." *Bryant v. Serv. Corp. Int'l*, 2008 WL 2002515 at *6 (N.D. Cal. May 7, 2008)

Only Defendant has submitted evidence, namely the declaration of Edgar Emmerling ("Emmerling"), its Associate Director of the Operational Finance Department, to establish the amount in controversy. ECF No. 5, Emmerling Decl. In addition to Emmerling's declaration, Defendant "is permitted to rely on a chain of reasoning that includes assumptions" to establish the amount in controversy—though, "[s]uch assumptions cannot be pulled from thin air but need some reasonable ground" based on allegations made in the FAC. *Arias*, 936 F.3d at 925 (internal citations omitted).

Beginning with the FAC, Plaintiff alleges a proposed class of hourly-paid or non-exempt employees who worked for Defendant in California from February 6, 2015 to final judgment. ECF No. 1, FAC ¶ 13. Plaintiff admits that "[t]he membership of the entire class is unknown to [her] at this time; however, the class is estimated to be greater than fifty (50) individuals . . . ." *Id.* at ¶ 15a. In challenging the Court's jurisdiction under CAFA, Plaintiff's contentions are directed mostly at the insufficiency of Emmerling's declaration in establishing the amount in controversy. ECF No. 4 at 9-20.

1. **Whether Emmerling's Declaration is *Per Se* Deficient**

Emmerling declares that his statements are based on his personal knowledge of Defendant's business records. ECF No. 5, Emmerling Decl. ¶¶ 1-2. He further declares that Defendant operated 28 stores in California, where *at least* two non-exempt employees each day were scheduled for a shift of at least 8 hours each. *Id.*, Emmerling Decl. ¶ 3. Additionally, Defendant employed at least 2,660 non-exempt employees around February 6, 2015, but 1,459 of them left Defendant's employment a year later. *Id.*, Emmerling Decl. ¶ 5. After February 2015, those non-exempt employees in California, including Plaintiff, were earning an average hourly rate of $11.12. *Id.*, Emmerling Decl. ¶¶ 4-5.

Plaintiff contends, however, that a declaration alone, such Emmerling's declaration here, is *per se* insufficient to establish the amount in controversy because it lacks foundation and corroborating documents such as payroll records. ECF No. 4 at 10-11. The Court disagrees: there is no such bright-line rule. For instance, in *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 398 (9th Cir. 2010), the Ninth Circuit reversed the district court's denial of a motion to remand and held that the defendant's declaration had sufficiently shown by the preponderance of the evidence that the amount in controversy exceeded $5 million because, as here, the plaintiff had presented no evidence to the contrary. *Lewis*, 627 F.3d at 398, 401-02. Similarly, district courts have held that declarations without more were sufficient evidence in light of allegations made in the complaints. *Cavada v. Inter-Cont'l Hotels Grp., Inc.*, 2019 WL 5677846, at *2-9 (S.D. Cal. Nov. 1, 2019) (finding that declarations of the director of human resources, along with allegations in the complaint, to be sufficient to demonstrate the amount in controversy exceeds $5 million); *Andrade v. Beacon Sales Acquisition, Inc.*, 2019 WL 4855997, at *4 (C.D. Cal. Oct. 1, 2019) (holding "a declaration from a knowledgeable employee based on her analysis of regularly kept and created business records" to be sufficient); *Alvarez v. Office Depot, Inc.*, 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (holding "that the evidence Defendant provides through Diebold's declaration is acceptable for purposes of determining the CAFA amount in controversy."). Thus, a declaration from a knowledgeable person, such as Emmerling, who is an associate director of operational finance, *can* be sufficient depending on the nature of the allegations in the FAC. With a

clear sight on the legal standard, the Court now turns to the merits of the Motion.

## 2. Claim for Waiting Time Penalties (5th Cause of Action)

Plaintiff' fifth cause of action asserts that Defendant violated California Labor Code § 203, ECF No. 1, FAC ¶ 93, which states in relevant part: "If an employer willfully fails to pay, without abatement or reduction . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203. Plaintiff claims that "[d]uring the relevant time period, Defendants intentionally and willfully failed to pay Plaintiff and the other class members who are no longer employed by Defendants their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ[ment]." *Id.*, FAC ¶ 91.

Defendant calculates that Plaintiff's fifth cause of action could reasonably reach the maximum damages of $3,893,779.20 as follows: average hourly rate of $11.12 x 8 hours/day [$88.96/day] x 30 days maximum penalty x 1,459 former employees. *Id.*, FAC ¶¶ 39-40. Defendant contends that "[t]his calculation is entirely reasonable given that some putative class members, including Plaintiff, did work shifts lasting 8 hours or more a day." ECF No. 5 at 20. There are four assumptions underlying this calculation that the Court must determine separately whether they are reasonably inferred from the FAC or sufficiently supported by Emmerling's declaration.

First is the average hourly rate of $11.12, which Plaintiff does not dispute in her Motion and Reply. ECF No. 4 at 17-20; ECF No. 6. This assumption is attested to by Emmerling, ECF No. 5, Emmerling Decl. ¶ 5, and the Court finds it to be supported by the preponderance of the evidence. Plaintiff, however, questions the validity of the second assumption as to the 8-hour average work day, the third assumption as to the maximum 30 days penalty, and fourth assumption of 100% violation rate. ECF No. 4 at 17-19. The Court addresses each one in turn.

As Plaintiff contends, Defendant has presented no evidence to show that its non-exempt employees normally had an 8-hour shift per day. *Id.* at 17. Indeed, Emmerling declares that

Defendant's non-exempt employees' "average shift was approximately 5.6 to 6.3 hours in length." ECF No. 5, Emmerling Decl. ¶ 3. Defendant's second assumption is thus contradicted by its own evidence, and the Court hereby reduces the average work hours per day to 5.95 for purposes of waiting time penalty calculation since it is a reasonable median number between 5.6 and 6.3. *See, e.g., Kastler v. Oh My Green, Inc.*, 2019 WL 5536198, at *5-6 (N.D. Cal. Oct. 25, 2019) (reducing defendant's calculations of the amount in controversy for the overtime, minimum wage, meal and rest break claims because the calculations were not supported by the evidence).

Citing to *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1004 (9th Cir. 2007), and *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013)[4], Plaintiff further contends that Defendant has presented no evidence to support the assumption of maximum 30 days penalty. ECF No. 4 at 18-19. Significantly, however, Plaintiff admits that the "legal certainty" standard that the Ninth Circuit applied in *Lowdermilk* and *Garibay* to determine whether the evidence sufficiently supported the maximum statutory penalty is no longer applicable to CAFA cases. *Id.* at 18 n.18; *see also Franz v. Beiersdorf, Inc.*, 745 F. App'x 47, 48 (9th Cir. 2018) (recognizing that the legal certainty standard used in *Lowdermilk* has been overruled). Regardless of the applicable legal standard, what is even more significant here is that Plaintiff pleads in the FAC that she and other class members are entitled to recover "up to a thirty (30) day maximum [penalty] pursuant to California Labor Code section 203." ECF No. 1, FAC ¶ 94. Because Plaintiff is asking for a maximum statutory penalty of 30 days, Defendant need not produce evidence, and it is reasonable to assume based on the FAC that Plaintiff *could* obtain statutory penalty of maximum 30 days. *Kastler*, 2019 WL 5536198, at *6 ("Because Plaintiff alleges that Defendant failed to pay overtime and minimum wage and meal and rest break

---

[4] It should be noted that *Garibay* is an unpublished opinion. "Unpublished dispositions and orders of [the Ninth Circuit] are *not* precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion." CTA9 Rule 36-3 (emphasis added).

premiums to present, using the thirty day maximum is inherently reasonable."); *Gonzalez v. Comenity Capital Bank*, 2019 WL 5304924, at *5 (E.D. Cal. Oct. 21, 2019) (holding that the court may consider maximum statutory penalty because the plaintiff has specified and asked for the statutory maximum in the pleading); *Nunes v. Home Depot U.S.A., Inc.*, 2019 WL 4316903, at *3 (E.D. Cal. Sept. 12, 2019) (same); *Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 912 (N.D. Cal. 2016) (holding that *Garibay* is distinguishable and defendant need not produce evidence when allegations in the complaint support the maximum statutory penalty).

In addition to *Lowdermilk* and *Garibay*, Plaintiff also cites *Longmire v. HMS Host USA, Inc.*, 2012 WL 5928485, at *7 (S.D. Cal. Nov. 26, 2012), *Dupre v. Gen. Motors*, 2010 WL 3447082, at *4 (C.D. Cal. Aug. 27, 2010), and *Rhoades v. Progressive Cas. Ins. Co.*, 2010 U.S. Dist. LEXIS 111026, at *14 (E.D. Cal. Oct. 7, 2010), to argue that Defendant's use of the maximum statutory penalty must be supported by evidence.[5] Plaintiff seems to misunderstand the holdings of those cases, which are distinguishable both in law and fact from this case. Whereas this Court has found that Defendant's assumption of the maximum statutory penalty is reasonably supported by the FAC, the district courts in those three cases found, under the legal certainty standard, that neither the allegations in the complaints nor evidence supported the maximum statutory penalty assumption. *Longmire*, 2012 WL 5928485, at *7 (holding that "Defendants' assumption that each employee is entitled to recover the full thirty-day maximum penalty has no basis in the allegations of the Complaint or the proof submitted by Defendants."); *Dupre*, 2010 WL 3447082, at *2, *4 ("no allegations are made that every class member

---

[5] It is worth pointing out that these three cases predate *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013), where the Ninth Circuit recognized that "*Lowdermilk* has been effectively overruled" by "the Supreme Court's reasoning in [*Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588]," and that the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard rather than the legal certainty standard.

is entitled to civil penalties *up to* the maximum amount available." (emphasis added)); *Rhoades*, 2010 U.S. Dist. LEXIS 111026, at *14 (finding that defendant has failed to provide evidence to show under the legal certainty standard that the plaintiff is entitled to the maximum statutory penalty). *Longmire, Dupre*, and *Rhoades* are therefore not applicable here.

Turning to the fourth assumption, Emmerling attests that Defendant had 2,660 employees around February 6, 2015, but a year later, 1,459 of them left their employment with Defendant. ECF No. 5, Emmerling Decl. ¶ 5. The calculation assumes that Defendant failed to pay *all* of its former employees their final wages in a timely manner as required by the California Labor Code. But as Plaintiff correctly points out, there is neither evidence nor allegations in the FAC to support this assumption. ECF No. 4 at 19. While the FAC has alleged that all class members are entitled to the maximum statutory penalty, it does not allege that Defendant failed to timely pay all its former employees their final wages. Likewise, Emmerling's declaration reveals no facts to support the fourth assumption.

What is significant, however, is Plaintiff's allegation that Defendant had "a pattern and practice" of not paying its employees their regular and overtime wages and requiring employees to working through their meal and rest periods without pay. ECF No. 1, FAC ¶¶ 32, 121. From this, it is reasonable to assume that some former employees' wages were not fully paid within a reasonable time after their termination or discharge. The question rather is how to induce the allegations into a finite number of former employees who did not receive their full final wages from Defendant. In *Ibarra*, the Ninth Circuit affirmed that because there was "a 'pattern and practice' of doing something does not necessarily mean always doing something," so without more, the assumption of a 100% violation rate was not reasonable. *Ibarra*, 775 F.3d at 1199. District courts have found, however, that violation rates of 25% to 60% can be reasonably assumed as a matter of law based on "pattern and practice" or "policy and practice" allegation. *See Olson v. Becton, Dickinson & Co.*, 2019 WL 4673329, at *4 (S.D. Cal. Sept. 25, 2019) (finding 25% violation rate to be appropriate based on the plaintiff's "pattern and practice" allegation); *Elizarraz v. United Rentals, Inc.*, 2019 WL 1553664, at *3-4 (C.D. Cal. Apr. 9, 2019) (same:

15

50% violation rate for meal period claim and 30% violation rate for rest period claim); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (same: 60% violation rate for the meal period claim and 30% violation rate for rest period claim); *Alvarez v. Office Depot, Inc.*, 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (same: 60% violation rate); *Oda v. Gucci Am., Inc.*, 2015 WL 93335, at *4 (C.D. Cal. Jan. 7, 2015) (same: 50% violation rate); *cf. Mendoza v. Savage Servs. Corp.*, 2019 WL 1260629, at *2 (C.D. Cal. Mar. 19, 2019) ("When a defendant's calculation lacks factual support, courts in [the Central District of California] routinely apply a 20% violation rate"). In light of these cases and Plaintiff's "pattern and practice" allegation, the Court finds a violation rate of 40%—a median between 25% and 60%—to be reasonable, which is 584 former employees. *Arias*, 936 F.3d at 927 (removing defendant need not prove that it "actually violated the law at the assumed rate."). "[W]hile not required, Plaintiff has not offered any better estimate of the alleged violation rate, despite the fact that she most likely knows at least roughly how often she was not afforded the required meal breaks." *Lopez v. Adesa, Inc.*, 2019 WL 4235201, at *3 (C.D. Cal. Sept. 6, 2019). For the above reasons, the maximum damages Plaintiff and other class members *could* reasonably obtain for their waiting time penalty claim should be calculated as follows: (average hourly rate of $11.12 x 5.95 hours/day [$66.16/day]) x 30 days maximum penalty x 584 former employees = $1,159,123.20—which is far lower than the $3.8 million in damages Defendant suggests.

### 3. Statutory Penalty Claim for Failure to Pay Minimum Wage (4th Cause of Action)

In California, any employer who pays or causes to be paid to any employee a wage less than the minimum shall be subject to a civil penalty payable to the employee as follows: "one hundred dollars ($100) for each underpaid employee for each pay period for which the employee is underpaid" and "[f]or each subsequent violation for the same specific offense, two hundred fifty dollars ($250) for each underpaid employee for each pay period for which the employee is underpaid . . . ." Cal. Labor Code § 1197.1(a)(1)-(2). Plaintiff's fourth claim is premised on the allegation that she and "the other class members are entitled to recover a penalty of $100 for the initial failure to timely pay each employee

16

minimum wage, and $250 for each subsequent failure to pay each employee minimum wage." ECF No. 1, FAC ¶ 87.

Defendant's calculation of the statutory penalty for failure to pay minimum wage is as follows: 2,660 employees x ($100 for the initial failure to timely pay minimum wage + $250 for each subsequent failure to pay each employee minimum wage [$350 total]) = $931,000. ECF No. 1 ("Notice of Removal") ¶ 38. This calculation assumes that all of Defendant's 2,660 non-exempt employees in California were not paid their minimum wage not once but twice. Again, Defendant does not explain how it arrived at a 100% rate of violation for the initial non-payment, let alone for a subsequent non-payment, so Plaintiff contests such calculation, ECF No. 4 at 16-17.

The lack of explanation is not fatal, however. As the Court has explained in Section IV.B.3 above, the central issue is how to reasonably induce Plaintiff's "pattern and practice" allegation of Defendant not paying its employees their minimum wage to a finite number for purposes of calculating the amount in controversy. ECF No. 1, FAC ¶¶ 13, 32, 121. For the same reasons stated in Section IV.B.3, the Court finds a violation rate of 40% for the initial failure to pay minimum wage and 20% for the second failure to be reasonable. The calculation for the unpaid minimum wage claim, accordingly, should be: (2,660 employees x 40% x $100) + (2,660 employees x 20% x $250) = $239,400.

**4.** **Claims for Unpaid Overtime, Meal and Rest Periods, and Minimum Wage (1st to 4th Causes of Action**

Defendant's calculations of the amount in controversy for the first to fourth claims are as follows:

1. First Claim for Unpaid Overtime: 28 stores x $16.68 in overtime hourly rate x 2,118 unpaid overtime hours = $989,190.72;

2. Second Claim for Unpaid Meal Period: 28 stores x $11.12 in average hourly rate x 2,118 shifts where meal periods were not provided = $659,460.48;

3. Third Claim for Unpaid Rest Period: 28 stores x $11.12 in average hourly rate x 3,177 shifts where rest periods were not provided = $989,190.72;

4. Fourth Claim for Unpaid Minimum Wage: 28 stores x $9 in minimum hourly wage x 2,118 hours where minimum wage was not paid = $533,736.

Based on Plaintiff's proposed class of all former and current non-exempt employees from the past four years plus, ECF No. 1, FAC ¶ 13, there could be as many as 2,660 members according to Emmerling, ECF No. 5, Emmerling's Decl. ¶ 5. Plaintiff contends again that there is no evidentiary basis for the above calculations. ECF No. 4 at 11-19. The Court again disagrees. Based on Plaintiff's "pattern and practice" allegation and Emmerling's declaration, the use of 2,118 and 3,177 shifts for the four claims are not unreasonable—and there is no evidence from Plaintiff to suggest otherwise.

If, between February 7, 2015 to February 6, 2016, there were 2,660 non-exempt employees working on average 5.6 to 6.3 hours, then there were 4.6 to 6.1 million hours of unpaid work that could be at issue here. Plus, from February 6, 2016 to February 5, 2019[6] when there were only around 1,201 non-exempt employees, the number of potentially unpaid work hours rose to 7.3 and 8.28 million. Based on the "pattern and practice" allegation that Defendant was not paying its employees overtime and minimum wage, Defendant used only 4,236 (2,118 + 2,118) hours out of those millions of hours (less than 0.1%) to calculate the maximum potential damages for Plaintiff's unpaid overtime and minimum wage claims.

Similarly, if Defendant's 28 stores in California were staffed daily with five to six employees, ECF No. 5, Emmerling's Decl. ¶ 3, then there were around 204,400 to 245,280 shifts between February 7, 2015 to February 6, 2019[7]. Instead of using all the hundreds of thousands of shifts, Defendant used only 5,295 (3,177 + 2,118) shifts (less than 2.6%) to calculate the maximum potential damages for Plaintiff's unpaid rest and meal periods claims. "Notably, Plaintiff fails to assert any different rate of

---

[6] Although Plaintiff's proposed class is made up of non-exempt employees from February 6, 2015 to final judgment, the Court conservatively uses the end date of February 5, 2019 to simplify the calculation.

[7] As stated in footnote 5 above, the Court conservatively uses the end date of February 6, 2019 to simplify the calculation.

violation or to submit any evidence indicating a contrary rate of violation. Plaintiff does not even submit her own declaration stating that she experienced less frequent rates of violation than those asserted by Defendants." *Unutoa v. Interstate Hotels & Resorts, Inc.*, 2015 WL 898512, at *3 (C.D. Cal. 2015). For these reasons, the Court cannot say Defendant's assumptions underlying calculations of maximum damages for the first to fourth claims to be unreasonable.

### 5. **Attorneys' Fees**

"[A] court *must* include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met. The defendant retains the burden, however, of proving the amount of future attorneys' fees by a preponderance of the evidence." *Arias*, 936 F.3d at 927 (emphasis added) (internal quotation marks and citations omitted). If the plaintiff is legally entitled to future attorneys' fees if the action succeeds, "then there is no question that future [attorneys' fees] are 'at stake' in the litigation." *Fritsch, LLC*, 899 F.3d at 794. However, "[a] district court may reject the defendant's attempts to include future attorneys' fees in the amount in controversy if the defendant fails to satisfy [its] burden of proof." *Id.* at 795.

Here, Defendant asks the Court to use the percentage-of-recovery method to calculate the attorneys' fees in controversy at the rate of 25%. ECF No. 5 at 23-24. "Where a settlement produces a *common fund* for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (emphasis added) (internal citation omitted). In *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002), the Ninth Circuit held "that [i]n common fund cases, the benchmark award is 25 percent of the recovery obtained, with 20–30% as the usual range"—though, the benchmark is only "a starting point" of the analysis, and its application "may be inappropriate in some cases." *Vizcaino*, 290 F.3d at 1047; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees." (citing *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir.1990)). In

*Fritsch*, the Ninth Circuit specifically referenced *Vizcaino* and *Hanlon* in holding that "a *per se* equitable rule [of 25% benchmark] is inapplicable" when it came to calculating attorneys' fees in controversy at the removal stage. *Fritsch, LLC*, 899 F.3d at 796. [8]

Prior to *Fritsch*, there was "a split among district courts[, mainly in California,] as to the appropriate method for [attorneys' fees] calculation in wage and hour class actions at the removal stage." *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403, at *11 (C.D. Cal. May 9, 2018). *Compare Scott v. Credico (USA) LLC*, 2017 WL 4210994, at *3 (N.D. Cal. Sept. 22, 2017) ("It is true that the Ninth Circuit uses a 25% benchmark to estimate what portion of a common fund may be recovered by attorneys whose efforts successfully secure the fund, but that is not the correct method for estimating attorneys' fees when determining whether a jurisdictional amount-in-controversy threshold is satisfied.") *with Fong v. Regis Corp.*, 2014 WL 26996, at *7 (N.D. Cal. Jan. 2, 2014) ("Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages."). Even after *Fritsch*, that split remains. Recognizing the application of *Fritsch*, one district court nonetheless held that:

> While the Court acknowledges the 25% benchmark does not automatically apply in all
> cases, the benchmark need only be adjusted "when special circumstances indicate that the

---

[8] It should be noted that in *Six (6) Mexican Workers*, the Ninth Circuit qualified that the 25% benchmark "should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311. Given that the *Fritsch* Court declined to extend the 25% benchmark rule from *Hanlon*, which was relying on *Six (6) Mexican Workers* for the benchmark, it seems logical that the "*per se* equitable rule" the *Fritsch* Court rejected incorporates the adjustment feature mentioned in *Six (6) Mexican Workers*. Neither *Vizcaino* nor *Hanlon* stands for the proposition that the application of the 25% benchmark is unqualified.

percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."  *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  Plaintiff does not raise any factors counseling against the application of the 25% benchmark, nor does the record before the Court reflect that a departure from this benchmark is warranted.  In the Court's experience, this appears to be a typical wage and hour class action to which courts in this Circuit would likely apply the 25% benchmark rate.

*Cortez v. United Nat. Foods, Inc.*, 2019 WL 955001, at \*7 (N.D. Cal. Feb. 27, 2019); *see also Kastler*, 2019 WL 5536198, at \*7 ("Although Defendant provide[d] very little to support a 25% fee calculation," the court, relying "on its own knowledge of customary rates and [its] experience concerning reasonable and proper fees," found that it was reasonable); *Ramirez v. Benihana Nat'l Corp.*, 2019 WL 131843, at \*2 (N.D. Cal. Jan. 8, 2019) (applying the 25% benchmark as a starting point in calculating the attorneys' fees portion of the amount in controversy).  Other district courts have held, however, that *Fritsch* mandated them to not even apply the 25% benchmark as the starting point of analysis when defendants provided no evidence.  *Zamarripa v. Superior Talent Res., Inc.*, 2019 WL 3246502, at \*6 (C.D. Cal. July 19, 2019) (holding that "simply ask[ing] the Court to adopt the 25 percent benchmark" without providing any evidence is insufficient to meet the defendant's burden); *Akana v. Estee Lauder Inc.*, 2019 WL 2225231, at \*7 (C.D. Cal. May 23, 2019) (holding the defendant's conclusory assertion that the plaintiff is entitled to 25% attorneys' fees of the total recovery without evidence is insufficient); *Gonzalez v. Hub Int'l Midwest Ltd.*, 2019 WL 2076378, at \*6 (C.D. Cal. May 10, 2019) ("Defendant's mere reference to the 25% benchmark, without more, fails to establish the amount of attorneys' fees in controversy."); *Salazar v. PODS Enterprises, LLC*, 2019 WL 2023726, at \*9 (C.D. Cal. May 8, 2019) (holding that, in light of *Fritsch*, applying the 25% benchmark without evidence is inappropriate); *Snow v. Watkins & Shepard Trucking, Inc.*, 2019 WL 1254571, at \*4 (C.D. Cal. Mar. 18, 2019) ("In light of *Fritsch*, Defendant's reliance on *Hanlon* and *Six (6) Mexican Workers*

does it no good.  Defendant's argument in favor of a 25% benchmark fee award does not prove by a preponderance of the evidence its contention that the putative class would recover $798,120.56 in attorneys' fees.").

Notwithstanding the existing split, *Fritsch* is clear on this point: "the defendant *must* prove the amount of attorneys' fees at stake by a preponderance of the evidence; we *may not* relieve the defendant of its evidentiary burden by adopting a *per se* rule for one element of the amount at stake in the underlying litigation." *Fritsch, LLC*, 899 F.3d at 796 (emphasis added).  Defendant fails to present any evidence to establish how the proposed 25% attorneys' fees calculation for the instant case is reasonable; it may well be that a lesser percentage in attorneys' fees would be reasonable here.  There is also no evidence to establish a reasonable amount of attorneys' fees using the lodestar method.  For these reasons, the Court cannot find for any amount of attorneys' fees in controversy.[9]  *See Arias*, 936 F.3d at 928 (declining to calculate attorneys' fees at the rate of 25% of recovery because, "[a]lthough such an estimate might be reasonable, we have declined to adopt" such a *per se* rule, leaving it up to the district to decide attorneys' fees on remand. (citing *Fritsch*, 899 F.3d at 796)); *cf. Gonzalez*, 2019 WL 5304925, at *10-11 (relying on the defendant's affidavit of hourly rate and the court's own knowledge of customary rates and of awards in comparable cases pursuant to *Fritsch*, the court determined the reasonable amount of attorneys' fees); *Reyes v. Staples Office Superstore, LLC*, 2019 WL 4187847, at

---

[9] *Fritsch* made clear that it did "not hold that a percentage-based method is never relevant when estimating the amount of attorneys' fees included in the amount in controversy, only that a *per se* rule is inappropriate," noting that "[t]he amount of damages a plaintiff recovers is certainly relevant," but it is "only one of many factors that a court should consider in calculating an award of attorney's fees." *Fritsch, LLC*, 899 F.3d at 796 n.6.  *Fritsch*, however, did not explain how the amount of damages a plaintiff recovers should factor into the calculation of attorneys' fees in controversy.  Moreover, if it is not *always* appropriate to apply the 25% benchmark as the starting point of analysis, then when, if ever, would it be appropriate?  More clarification from the Ninth Circuit is necessary to resolve the district court split.

*5 (C.D. Cal. Sept. 3, 2019) (relying on *Fritsch*'s guidance, the court found that the plaintiff's attorney's admission of his hourly rate, together with the court's knowledge of customary rates that employment cases in the Central District tend to take between 100 and 300 hours to litigate through trial, was sufficient to determine the amount of attorneys' fees in controversy). Without the incorporation of attorneys' fees, the amount in controversy as established by Defendant above is less than $5 million.[10] The Court, therefore, has no jurisdiction over this case under CAFA.

## V. <u>CONCLUSION AND ORDER</u>

For the foregoing reasons, Plaintiff's Motion to Remand is GRANTED—this action is hereby REMANDED to the Tulare Superior Court.

IT IS SO ORDERED.

Dated: __**January 13, 2020**__          _____**/s/ Lawrence J. O'Neill**_____
                                                    UNITED STATES DISTRICT JUDGE

---

[10] The calculation is as follows:

| Claims | The Court's Estimated Amount in Controversy Based on the Evidence Presented by Defendant and Plaintiff's Allegations |
|---|---|
| Unpaid Overtime Claim (1st Claim) | $989,190.72 |
| Unpaid Meal Period Claim (2nd Claim) | $659,460.48 |
| Unpaid Rest Period Claim (3rd Claim) | $989,190.72 |
| Unpaid Minimum Wage Claim (4th Claim) | $533,736 |
| Statutory Penalty Claim for Failure to Pay Minimum Wage (4th Claim) | $239,400 |
| Statutory Penalty Claim for Failure to Pay Final Wages (5th Claim) | $1,159,123.20 |
| **TOTAL** | $4,570,101.12 |